**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2840
_____

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF PUBLIC WELFARE,

Appellant

v.

UNITED STATES OF AMERICA;
UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civ. No. 09-0811)
District Judge:  Hon. Donetta W. Ambrose

Submitted Under Third Circuit LAR 34.1(a)
March 17, 2011

Before:  BARRY, CHAGARES, and ROTH, <u>Circuit Judges</u>.

(Filed: March 22, 2011)

_____

OPINION
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

The Commonwealth of Pennsylvania's Department of Public Welfare ("DPW")

seeks judicial review of one aspect of a final decision by the United States Department of

Health and Human Services ("HHS").  The District Court issued a final order affirming the HHS's decision on May 19, 2010.  DPW now appeals.  For the reasons stated below, we will affirm the order of the District Court.

I.

We write for the parties' benefit and recite only the facts essential to our disposition.  Medicaid, established in 1965, provides medical care to low-income families with dependent children, elderly persons, and persons with disabilities.  Medicaid is a cooperative program between the federal government and the states.  State participation is voluntary, but states that do participate must comply with the Medicaid Act, 42 U.S.C. §§ 1396 et seq., and regulations promulgated by HHS.  Pennsylvania participates in the program, and between October 2000 and February 2004, Pennsylvania operated its mandatory Medicaid managed care program in twenty-five of its sixty-seven counties.

The federal government reimburses each state for a portion of Medicaid's costs.  Between October 2000 and February 2004, the federal government reimbursed Pennsylvania for approximately 54% of the state's Medicaid expenditures.  Certain Medicaid services, however, are entitled to higher federal reimbursement rates.  The federal government, for example, provides 90% funding for family planning services administered to Medicaid beneficiaries.  See 42 U.S.C. § 1396b(a)(5).

This appeal involves the methodology utilized by DPW to calculate the family planning expenditures entitled to this 90% federal reimbursement in Pennsylvania between October 2000 and February 2004.  In April 2001, DPW wrote a letter to the

2

Centers for Medicare and Medicaid Services ("CMS") describing the methodology that it planned to use. The letter stated that DPW was in the process of developing a "Family Planning Factor," a ratio designed "to determine what proportion . . . or amount of managed care premiums related to the provision of family planning services" and therefore entitled to the 90% federal reimbursement. Appendix ("App.") 160a. For purposes relevant to this appeal, this "Family Planning Factor" took the form of a single fraction, consisting of a numerator and a denominator. The denominator represented the total of all expenditures in the twenty-five mandatory managed care counties. DPW contends that its April 2001 letter made plain that the numerator would represent state-wide data and not just data from the twenty-five counties with mandatory managed care programs. DPW does concede, however, that the letter contained mixed language on this point. See DPW Br. at 6. For example, the April 2001 letter represented that "[a] key factor in developing the [Family Planning Factor] is assuring that the methodology represents family planning costs associated with populations eligible to enroll in managed care and considers only those costs." App. 160a.

Utilizing the "Family Planning Factor" just described, DPW calculated that Pennsylvania's mandatory Medicaid managed care program incurred $114.4 million in costs in family planning services between October 2000 and February 2004. Pursuant to the 90% federal reimbursement rate, DPW claimed a $102.9 million federal Medicaid reimbursement.

3

The HHS Office of Inspector General ("OIG") subsequently conducted an audit of DPW's calculation and determined that DPW erred by including ineligible beneficiaries from all sixty-seven counties in the numerator of the Family Planning Factor, an error compounded by the failure to account for these ineligible beneficiaries in the denominator. Pursuant to OIG's calculation – which utilized only data from the eligible beneficiaries from the twenty-five managed care counties in both the numerator and the denominator – OIG concluded that Pennsylvania had overstated its family planning costs during the relevant time period by $44.4 million and therefore had received $15,070,548.00 in unwarranted reimbursements. As a result of this audit, CMS notified Pennsylvania on November 1, 2006 that it was disallowing the approximately $15.1 million in federal funds that DPW had improperly claimed.

DPW subsequently appealed this disallowance to the HHS Departmental Appeals Board (the "Board"), arguing that its methodology was reasonable given that CMS had approved the proposed Family Planning Factor. Both parties submitted more than six hundred pages of documentary evidence to the Board, including factual submissions and written legal arguments. The factual submissions included three declarations by CMS officials denying that CMS had approved the use of state-wide data in DPW's Family Planning Factor.

DPW requested the opportunity to supplement this documentary evidence with an evidentiary hearing before the Board. DPW stated that such a hearing was necessary for two reasons. First, DPW sought to cross-examine the three CMS declarants regarding

4

whether they approved DPW's Family Planning Factor. Second, DPW wished to elicit testimony from the OIG auditors regarding OIG's audit calculations.

The Board issued its decision on April 27, 2009, upholding the disallowance in full and denying the request for an evidentiary hearing. On June 23, 2009, DPW sought judicial review of the Board's denial of the evidentiary hearing before the District Court. In an opinion dated May 19, 2010, the District Court granted HHS's motion for summary judgment and affirmed the Board's decision. This appeal followed.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. "When reviewing a grant of summary judgment in a case brought under the APA, we apply de novo review to the district court's ruling, and in turn apply the applicable standard of review to the underlying agency decision." Cyberworld Enter. Techs., Inc. v. Napolitano, 602 F.3d 189, 195-96 (3d Cir. 2010). The APA requires courts to set aside an agency decision if that agency procedurally erred or if the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

## III.

The sole issue presented by this appeal is whether the Board abused its discretion in denying DPW's request for an evidentiary hearing. DPW argues that HHS's regulations "mandate[] an evidentiary hearing." DPW Br. at 15. The District Court held that "[t]his argument is without merit." App. 7a. We agree.

The text of the regulation relied upon by DPW provides that:

> If the appellant believes a hearing is appropriate, the appellant should specifically request one at the earliest possible time (in the notice of appeal or with the appeal file). The Board will approve a request (and may schedule a hearing on its own or in response to a later request) if it finds there are complex issues or material facts in dispute the resolution of which would be significantly aided by a hearing, or if the Board determines that its decisionmaking otherwise would be enhanced by oral presentations and arguments in an adversary, evidentiary hearing. The Board will also provide a hearing if otherwise required by law or regulation.

45 C.F.R. § 16.11(a) (emphasis added). Pursuant to this regulation, the Board "will approve" a request for a hearing if two conditions are met. First, the Board must determine that "there are complex issues or material facts in dispute." Second, the Board must find that "the resolution" of these disputed "complex issues or material facts" "would be significantly aided by a hearing."

Pursuant to this standard, we concur with the District Court that the Board did not abuse its discretion in denying DPW's request for an evidentiary hearing. First, DPW wished to cross examine three CMS declarants regarding whether they approved DPW's Family Planning Factor. A hearing on this issue, however, would not significantly aid the resolution of disputed complex issues or material facts. As an initial matter, the Board struck the three CMS declarations from the record, rendering DPW's request moot. We also agree with the Board that "DPW has not shown that CMS approved the methodology DPW actually used to calculate the claims." App. 18a. And in any event – even assuming that CMS did somehow "approve" DPW's methodology by presumably not overtly objecting to language found in the April 2001 letter – the Board did not abuse

6

its discretion in denying DPW's request for an evidentiary hearing in light of the fact that DPW's family planning claim methodology was "on its face unreasonable." App. 25a. By including data for all sixty-seven counties in the numerator and data for only the twenty-five mandatory managed care counties in the denominator, DPW's Family Planning Factor "skew[ed] the results and overstat[ed] the amount of [] payments attributable to family planning services" App. 25a. DPW has never disputed this determination, and its argument that CMS's implicit approval of DPW's faulty calculation overrides the Medicaid Act's statutory mandate of providing an enhanced 90% federal reimbursement rate only for state expenditures attributable to family planning expenditures, 42 U.S.C. § 1396b(a)(5), is simply without merit. Cf. Bennett v. Ky. Dep't of Educ., 470 U.S. 656, 669 (1985) ("Unlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy.").

Second, DPW requested an evidentiary hearing to elicit testimony from OIG auditors. The Board rejected this request, holding that the OIG audit "procedure appears logical," and that DPW failed to "identify any missing steps or other information that is needed to understand the calculation" of the audit. App. 29a. Again, we agree with the District Court that the Board did not abuse its discretion in so holding. DPW has not identified any specifics errors made by OIG during the audit process. Furthermore, the OIG audit report was created using a database of claims that Pennsylvania itself created, and thus "[i]f DPW had questions about whether the database in fact included only family

7

planning expenditures, DPW had the ability to check that itself." App. 30a. The Board acted well within its discretion in concluding that an evidentiary hearing to elicit testimony from OIG auditors would not significantly aid the resolution of any disputed material fact.

IV.

For the reasons stated above, we will affirm.